## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MICHAEL JETTE, *individually, and on behalf of a class of similarly situated persons*,

        Plaintiff,

    v.

BANK OF AMERICA, N.A.,

        Defendant.

Case No.

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, Michael Jette ("Plaintiff" or "Mr. Jette"), on behalf of himself and all persons similarly situated, alleges the following based on personal knowledge as to allegations relating to himself and on information and belief and the investigation of counsel as to the rest.

### INTRODUCTION

1.    Most adult Americans have at least one credit card. And in the era of electronic banking, the ability to make automatic credit card payments is essential for consumers who want to streamline their finances and avoid late payment fees.

2.    Over the last few years, the credit card market—the largest U.S. consumer lending market measured by the number of users—has grown in almost all dimensions and measures.[1] Every year since 2015, an increasing number of credit card holders have enrolled in some kind of automatic

---

[1] Consumer Financial Protection Bureau, *The Consumer Credit Card Market* 50 (Aug. 2019), https://files.consumerfinance.gov/f/documents/cfpb_consumer-credit-card-market-report_2019.pdf (last visited June 2, 2020).

payment option.[2] In 2018, automatic payments surpassed payments by paper check as the second-most-common payment method after online non-automatic payments.[3]

3.      Typically, consumers who want to set up automatic payments through the credit card issuer can provide deposit account information through the issuer's online portal or mobile app, then authorize recurring automatic payments.[4]

4.      Most credit card issuers allow cardholders to choose to automatically pay (1) their minimum amount due, (2) their balance reflected on their most recent billing statement, or (3) a fixed monthly amount.[5] American Express offers a fourth option, to pay the "Total Balance," defined as the "full balance on your account."

5.      When a consumer chooses to pay the minimum amount due, the minimum amount due on the consumer's most recent statement will be automatically withdrawn from the consumer's deposit account every month. If there is a remaining balance, that balance will carry over to the next month—unless the cardholder makes an additional payment—and accrue interest according to the cardholder's agreement with the issuer. As such, the minimum amount due option is the most costly for the cardholder and most profitable for the credit card issuer.

6.      When a consumer chooses to pay the statement balance every month (or the full balance due, i.e., the statement balance plus any additional purchases), that amount will be withdrawn from the consumer's deposit account, and no balance will carry over. This option results in the least amount of accrued interest for the cardholder and the least profit for the credit card issuer.

7.      If a consumer selects a fixed monthly amount, that amount will be withdrawn from their deposit account every month regardless of the statement balance or minimum amount due.

---

[2] *Id.*
[3] *Id.* at 51.
[4] *Id.* at 50.
[5] *Id.*

8.      Defendant, Bank of America, N.A. ("Defendant" or "Bank of America"), like other major credit card issuers, offers its cardholders these three options: Minimum Amount Due, Account Balance, and Fixed Amount. Like other major credit card issuers, Bank of America's uniform credit card agreements provide that if the cardholder pays their balance by the due date, Bank of America will not charge the cardholder interest on purchases.

9.      But unlike other major credit card issuers, Bank of America invented a duplicative fourth option that intentionally misleads consumers into incurring unwanted credit card debt and interest charges. In addition to "Minimum Amount Due," "Account Balance," and "Fixed Amount," Bank of America also provides the option to set up automatic payments for the "Amount Due," listing it as the default among the four options.



10.     Presented with these four options, reasonable consumers would expect "Amount Due" to mean the statement balance, (i.e., the "amount due" from the last month's purchases), while "Account Balance" would be an option similar to American Express's fourth option (i.e., the statement balance plus any other purchases made since the statement date). Reasonable consumers

would expect that after selecting "Amount Due," Bank of America would withdraw the total "amount due" from their deposit accounts every month, and, as a result, no balance would carry over to the next month and no interest would accrue.

11.     At a minimum, reasonable consumers would expect "Amount Due" to mean something different from "Minimum Amount Due," since that option exists independently.

12.     But in fact, under Bank of America's misleading construct, "Amount Due" means *the same thing* as "Minimum Amount Due." Selecting "Amount Due" will cause Bank of America to withdraw as payment only the *minimum* amount due from the customer's bank account.

13.     "Amount Due" is a duplicative feature that serves no purpose except to confuse customers and inflate Bank of America's profits. Bank of America, which collects interest charges as profit, makes less money when customers pay their entire account balance every month and do not incur interest.

14.     Bank of America does not list the payment options in alphabetical order or by expected payment size. By positioning "Amount Due" as the first option and setting it as the default, Bank of America is trying to further influence customers into selecting that option.

15.     Cardholders who select "Amount Due," intending to choose an option that will pay off their entire credit card balance, instead end up paying only the minimum amount owed. As a result, their credit card debt grows, and they accrue the interest they were trying to avoid—to Bank of America's benefit.

16.     There is no reason for Bank of America to offer both the "Amount Due" and "Minimum Amount Due" options other than to confuse cardholders and profit from their confusion.

17.     Bank of America's credit card agreements uniformly provide that North Carolina law applies to customer accounts. By offering a duplicative payment option, which is likely to mislead

consumers into paying unwanted interest, Bank of America has violated North Carolina consumer protection law and breached the implied covenant of good faith and fair dealing.

## JURISDICTION AND VENUE

18.     This Court has personal jurisdiction over Bank of America because Bank of America does business in this District and certain of the conduct at issue occurred in this District, as set forth herein.

19.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of the classes are citizens of states other than the Defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

20.     Venue properly lies in this District under 28 U.S.C. § 1391 because the events giving rise to the claims in this action occurred in this District.

## PARTIES

21.     Plaintiff is a resident of Hoboken, New Jersey, and holds a Bank of America credit card.  Plaintiff, thus, is a New Jersey citizen.

22.     Defendant is a national bank headquartered in North Carolina and, thus, is a North Carolina citizen. Among other things, Bank of America markets and issues credit cards to consumers.

## COMMON FACTUAL ALLEGATIONS

23.     Bank of America provides customers with a variety of credit and banking services. Among these are several credit card options. A credit card allows the cardholder to borrow money to pay for goods and services. Each time the cardholder uses the credit card to pay for a purchase, the amount of the purchase adds to the balance of the card.

24.     The terms of Bank of America's credit cards are set forth in its standard credit card agreements ("Card Agreement(s)"). The Card Agreements provide that Bank of America will generate

a monthly billing statement showing the balance owed on the credit card, the payment due date, the minimum amount due, and any interest charges or fees incurred.

25.     Each billing cycle, Bank of America credit card holders must pay at least the total minimum payment due shown on the customer's monthly statement by the customer's payment due date. Under the terms of the uniform Card Agreements, if a customer pays their entire card balance by the due date, then Bank of America will not charge interest on purchases. If the customer pays only the minimum amount due, or some other amount less than the full balance, the remaining balance will carry over to the next month and accrue interest according to the Annual Percentage Rate ("APR"), which varies with the market.

26.     Bank of America offers its customers the ability to set up automatic payments through its website. Automatic monthly payments help customers avoid late fees by ensuring that they make a payment each month.

27.     Customers who want to set up automatic payments can do so by logging into their Bank of America account online. Through Bank of America's website, customers can set up automatic payments (known as "AutoPay") by providing their deposit account information to Bank of America so that Bank of America can withdraw their chosen payment amount each month.

28.     Like other major credit card issuers, Bank of America offers cardholders the ability to choose to pay their minimum amount due, their statement balance, or a fixed amount.

29.     But, unlike other major credit card issuers, Bank of America offers a fourth option: "Amount Due." Bank of America lists "Amount Due" as the default option, first among the list of payment choices:



30.     The phrase "Amount Due" implies that this option will cause Bank of America to withdraw the full amount owed on the credit card, i.e., the balance owed as of the last statement. Reasonable consumers would expect that by choosing "Amount Due," they are choosing to pay off the amount due as of the previous month—thereby avoiding interest charges on purchases under the Card Agreement.

31.     In fact, although offered as a separate and distinct option, "Amount Due" means the exact same thing as "Minimum Amount Due."

32.     Reasonable consumers would not select "Amount Due" if they intended only to pay their minimum monthly amount; rather, they would select "Minimum Amount Due."

33.     Contrary to the expectations of reasonable consumers, selecting "Amount Due" will cause Bank of America to withdraw only the *minimum* amount due—typically leaving a balance to carry over to the next month and accrue interest charges.

34.     Bank of America's misleading explanation of this duplicative option does not provide any clarity and further demonstrates Defendant's intention to mislead consumers. Hidden in a tiny

link called "About Amounts" are four confusing descriptions of Bank of America's payment options.

None of them explain the difference between "Amount Due" and "Minimum Amount Due."

35.     The description of "Minimum Amount Due" provides:

For some bills, such as credit cards, you can pay a minimum amount of the total due. However, selecting this option may leave a balance due. Not paying the full amount due could result in fees or finance charges.

The description of "Account Balance" provides:

For some bills, such as credit cards, you can pay the total amount due. Selecting this option helps you avoid any fees or finance charges resulting from not paying the total balance.

The description of "Amount Due" provides:

Every bill has an amount due. Some bills, such as credit cards, will have additional options for paying what's due. Selecting this option may leave a balance due. Not paying the full amount due could result in fees or finance charges.

**About Amounts** 

**Minimum Amount**
For some bills, such as credit cards, you can pay a minimum amount of the total due. However, selecting this option may leave a balance due. Not paying the full amount due could result in fees or finance charges.

**Amount Due**
Every bill has an amount due. Some bills, such as credit cards, will have additional options for paying what's due. Selecting this option may leave a balance due. Not paying the full amount due could result in fees or finance charges.

**Account Balance**
For some bills, such as credit cards, you can pay the total amount due. Selecting this option helps you avoid any fees or finance charges resulting from not paying the total balance.

**Fixed Amount**
Pay a set amount for the bill. It won't vary based on what's due. This option is helpful when making payments larger than the amount due. However, if your balance due changes, the payment may not cover the total amount due.

36.     These misleading and confusing descriptions do not explain that there is no difference between "Minimum Amount Due" and "Amount Due," nor do they clearly state that selecting "Amount Due" will ensure that only the minimum amount due is paid. At best, Bank of America

states that selecting "Amount Due" "may" leave a balance due. But this warning, hidden in a nondescript link, out of sight from most consumers who would not click the link, is not sufficient to put consumers on notice that "Amount Due" will only cause them to pay the minimum amount due, will leave a remaining balance, and will cause them to accrue interest.

37.     Nor do Bank of America's monthly billing statements offer any explanation or clarity. The phrase "Amount Due" does not appear anywhere on Bank of America's statements. The statements refer only to the "New Balance Total," the "Current Payment Due," and the "Total Minimum Payment Due." Neither the statements nor Bank of America's website explain how to match "New Balance Total," "Current Payment Due," and "Total Minimum Payment Due" with the automatic payment options.

38.     Similarly, Bank of America's Card Agreement provides that Bank of America will not charge interest on purchases "if you pay your entire balance by the due date," but does not use the phrase "Amount Due."

39.     The only reason to offer this misleading and duplicative option is to increase Bank of America's profits by allowing it to charge interest to customers who otherwise intended to pay off their balance monthly and not accrue interest. And the only reason to list "Amount Due" first among the payment options, as the default, is to further confuse customers into choosing it.

40.     Bank of America does not earn interest from customers who pay their full account balances every month. But by duping them into paying only the minimum amount due, Bank of America can cause these customers to grow the balances on their credit cards and incur interest charges that will benefit Bank of America.

41.     Other major credit card issuers do not offer duplicative, confusing options. Chase Bank, Capital One, and USAA, for example, permit customers to set up automatic payments three ways: "Minimum payment due," "Statement balance," and "Fixed amount."

42.     American Express offers four options that are clearly explained: (1) the Minimum Payment Due, defined as "minimum amount due to keep the account current"; (2) the Statement Balance, defined as the "New Balance showing on your most recent billing statements"; (3) the Total Balance, defined as "the full balance on your account"; and (4) an "Other" fixed amount.

43.     Bank of America stands alone in misleading its customers into paying only the minimum amount due when they intend to pay some larger amount.

## NAMED PLAINTIFF'S FACTS

44.     Plaintiff opened a Bank of America credit card in December 2019. He opened the credit card for personal, family, or household uses.

45.     Mr. Jette opened the Bank of America credit card to take advantage of a promotion.

46.     Mr. Jette has opened credit cards in the past. His ordinary practice is to connect each credit card to his personal bank account and authorize automatic monthly payments of the full balance owed, such that the card is paid in full each month and no balance carries over. Mr. Jette chooses the option to pay the full balance due each month in order to avoid paying interest charges and fees.

47.     In January 2020, Mr. Jette made $458.93 in purchases on his new Bank of America credit card. He was also charged a $95.00 Annual Fee. His January statement balance was $553.93 and his minimum payment was $25.00.

48.     Prior to making his first payment, Mr. Jette set up automatic payments through Bank of America's website, authorizing Bank of America to withdraw monthly payments from his deposit account at Chase. He selected "Amount Due," intending to cause Bank of America to withdraw the balance reflected on his last statement each month by the due date, thus avoiding interest charges under the Card Agreement. Based on his experience with other credit cards, as well as his common-sense understanding of Bank of America's options, Mr. Jette believed the "Amount Due" option would cause Bank of America to withdraw from his checking account the amount reflected on his last

month's statement, allowing no balance to carry over to the following month, and accruing no interest. Mr. Jette believed that the "Account Balance" option was the "Amount Due" plus any additional purchases made since the statement date.

49.     Unbeknownst to Mr. Jette, the "Amount Due" option only caused Bank of America to withdraw the minimum amount due from his deposit account, leaving a balance due that would accrue interest.

50.     Thus, on February 4, 2020, Bank of America withdrew only $25.00 from Mr. Jette's deposit account and applied it to his amount owed, leaving a balance owed and causing Mr. Jette to accrue $33.84 in interest.

51.     Mr. Jette's February statement shows that he used his Bank of America credit card to pay for $3,472.74 in goods and services the following month. After adding the interest from the previous month, his balance was $4,035.51. His minimum payment was $73.00.

52.     Because the "Amount Due" option that Mr. Jette had selected only caused Bank of America to withdraw the minimum amount due from his deposit account and pay only that amount, instead of the statement balance, on March 4, 2020, Bank of America withdrew only $73.00 from Mr. Jette's account and applied it to his credit card balance, leaving a balance owed. As a result, Mr. Jette incurred $61.06 in interest.

53.     The following month, Mr. Jette used his Bank of America credit card to pay for $1,152.76 in goods and services. He received a statement credit for $565.53. His balance, shown on his March 2020 statement, grew to $4,610.80, including the interest accrued during the previous month. Mr. Jette's minimum amount due was $106.00.

54.     Because the "Amount Due" option that Mr. Jette had selected only caused Bank of America to withdraw the minimum amount due from his deposit account and pay only that amount, instead of the statement balance, on April 4, 2020, Bank of America withdrew only $106.00 from Mr.

11

Jette's account and applied it to his credit card balance, leaving a balance owed. As a result, Mr. Jette incurred $64.13 in interest.

55.     The following month, Mr. Jette used his Bank of America credit card to pay for $366.89 in goods and services. He received refunds of $639.16 for previous purchases. His balance, shown on his April 2020 statement, was $4,296.66, with a minimum amount due of $106.00.

56.     Because the "Amount Due" option that Mr. Jette had selected only caused Bank of America to withdraw the minimum amount due from his deposit account and pay only that amount, instead of the statement balance, on May 4, 2020, Bank of America withdrew only $106.00 from Mr. Jette's account and applied it to his credit card balance, leaving a balance owed. As a result, Mr. Jette incurred $59.07 in interest.

57.     The following month, Mr. Jette used his Bank of America credit card to pay for $336.41 in goods and services. His balance, shown on his May statement, was $4,586.14, with a minimum amount due of $104.00.

58.     In total, between January and May 2020, Mr. Jette incurred interest charges of $218.10. Mr. Jette had intended to (and believed he had) select an automatic payment that would pay off his total balance each month.

59.     Mr. Jette reasonably believed that he had authorized Bank of America to automatically pay the entire balance owed on the statement. He had no reason to think that Bank of America would only withdraw the minimum amount owed, because he had not chosen "Minimum Amount Due." Because he believed he understood the meaning of the "Amount Due" option, Mr. Jette did not regularly monitor his monthly statements.

60.     In May 2020, Mr. Jette decided to review his statements. He was shocked and dismayed when he saw that he was carrying a balance of over $4,500.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of the

following class of persons (the "Class"), subject to modification after discovery and case development:

**All persons (1) with a Bank of America credit card (2) who enabled automatic payments through the Bank of America website and (3) selected the "Amount Due" payment option, during the applicable statutes of limitations through the date a class is certified.**

62.     Class members are identifiable through Defendant's records and payment databases.

63.     Excluded from the Class are the Defendant; any entities in which it has a controlling

interest; its agents and employees; and any Judge to whom this action is assigned and any member of

such Judge's staff and immediate family.

64.     Plaintiff proposes that he serve as Class representative.

65.     Plaintiff and the Class have all been harmed by the actions of Defendant.

66.     Numerosity is satisfied. There are likely thousands of Class members. Individual

joinder of these persons is impracticable.

67.     There are questions of law and fact common to Plaintiff and to the Class, including,

but not limited to:

   a.     Whether the "Amount Due" payment option is deceptive;

   b.     Whether Defendant violated the North Carolina Unfair and Deceptive Trade

Practices Act;

   c.     Whether Defendant violated the North Carolina Debt Collection Act;

   d.     Whether the "Amount Due" option is likely to mislead consumers;

   e.     Whether Defendant was unjustly enriched;

   f.     Whether Defendant owes a duty of good faith and fair dealing to its

customers;

   g.     Whether Defendant violated the duty of good faith and fair dealing;

h.      Whether Plaintiff and the Class were damaged by Defendant's conduct;

i.      Whether Plaintiff and the Class are entitled to damages as a result of

Defendant's actions;

j.      Whether Plaintiff and the Class are entitled to restitution; and

k.      Whether Plaintiff and the Class are entitled to attorneys' fees and costs.

68.     Plaintiff's claims are typical of the claims of the Class members. Defendant offered the same automatic payment options to all Class members.

69.     Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class members and Plaintiff will adequately and fairly protect the interests of the Class members. Plaintiff has hired skilled and experienced counsel to represent himself and the Class.

70.     Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

71.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

**COUNT I**
**Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. § 75-1.1, *et seq.***
**On Behalf of Plaintiff and the Class**

72.     Paragraphs 1 to 71 are incorporated herein by reference.

73.     The claims of Plaintiff and the Class members are governed by North Carolina law under their uniform Card Agreements with Bank of America.

74.     The North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C. Gen. Stat. § 75-1.1, *et seq.*, prohibits the use of "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-

14

1.1(a).

75.     Defendant engaged in "commerce," as defined by N.C. Gen. Stat. § 75-1.1(b), when it offered credit cards to Plaintiff and the Class members.

76.     Defendant engaged in unfair and deceptive acts when it offered a meaningless and misleading payment option that serves no purpose except to confuse its customers. For cardholders who enabled automatic payments, Defendant offered online automatic payment options labeled "Minimum Amount Due," "Amount Due," "Account Balance," and "Fixed Amount."  The phrase "Amount Due" implies that the "Amount Due" option will cause Bank of America to withdraw the full amount owed on the credit card each month, similar to the statement balance option offered by other banks. Reasonable consumers would expect that by choosing "Amount Due," they are choosing to pay off the amount due as of the last statement—thereby avoiding interest charges on purchases under the Card Agreement.

77.     In fact, "Amount Due" means the exact same thing as "Minimum Amount Due."

78.     Reasonable consumers would not select "Amount Due" if they intended only to pay their minimum monthly amount. Rather, they would select "Minimum Amount Due."

79.     Contrary to the expectations of reasonable consumers, selecting "Amount Due" will cause Bank of America to withdraw only the *minimum* amount due—typically leaving a balance to carry over to the next month and accrue interest charges.

80.     Plaintiff and the Class members selected "Amount Due," believing it to mean something different than "Minimum Amount Due." Plaintiff and the Class members relied on the option's name, as contrasted with the alternative option "Minimum Amount Due," in selecting the option labeled "Amount Due" and believing it to mean something other than "Minimum Amount Due." This reliance was reasonable as it was based upon industry practice and common sense.

81.     As a result, Bank of America withdrew only the minimum amounts due on their

account balances, leaving balances that carried over and incurred interest charges.

82.     Plaintiff and the Class members were harmed by this deceptive conduct.

83.     Plaintiff and the Class members seek treble damages and reasonable attorneys' fees and costs.

84.     To the extent required, this cause of action is being pled in the alternative.

**COUNT II**
**Violation of the North Carolina Debt Collection Act ("NCDCA")**
**N.C. Gen. Stat. § 75-50, *et seq.***
**On Behalf of Plaintiff and the Class**
**(In the Alternative)**

85.     Paragraphs 1 to 71 are incorporated herein by reference.

86.     The claims of Plaintiff and the Class members are governed by North Carolina law under their uniform Card Agreements with Bank of America.

87.     Plaintiff and the Class members engaged in commerce when they took out Bank of America credit cards. Plaintiff opened his Bank of America credit card for personal, family, or household uses. *See* N.C. Gen. Stat. § 75-50(1).

88.     The NCDCA defines "debt collector" as "any person engaging, directly or indirectly, in debt collection from a consumer. N.C. Gen. Stat. § 75-50(3). The NCDCA applies to Defendant because it collects alleged debts arising out of consumer transactions.

89.     The NCDCA prohibits debt collectors like Defendant from using "any fraudulent, deceptive, or misleading representation" to collect a debt, including, but not limited to, "[f]alsely representing the status or the true nature of the services rendered by the debt collector or his business." *See* N.C. Gen. Stat. § 75-54(7).

90.     The NCDCA further prohibits debt collectors like Defendant from collecting or attempting to collect any debt by use of unconscionable means. *See* N.C. Gen. Stat. § 75-55.

91.     For cardholders who enabled automatic payments, Defendant offered a meaningless

and misleading payment option that serves no purpose except to confuse its customers because it misrepresented the nature of its services. Defendant offered online automatic payment options labeled "Minimum Amount Due," "Amount Due," "Account Balance," and "Fixed Amount." The phrase "Amount Due" implies that the "Amount Due" option will cause Bank of America to withdraw the full amount owed on the credit card each month, similar to the statement balance option offered by other banks. Reasonable consumers would expect that by choosing "Amount Due," they are choosing to pay off the amount due as of the last statement—thereby avoiding interest charges on purchases under the Card Agreement.

92.     In fact, "Amount Due" means the exact same thing as "Minimum Amount Due."

93.     Reasonable consumers would not select "Amount Due" if they intended only to pay their minimum monthly amount; rather, they would select "Minimum Amount Due."

94.     Contrary to the expectations of reasonable consumers, selecting "Amount Due" will cause Bank of America to withdraw only the *minimum* amount due—typically leaving a balance to carry over to the next month and accrue interest charges.

95.     This conduct violated N.C. Gen. Stat. § 75-54 generally (and § 75-54(7) specifically) because Defendant misrepresented the nature of its payment options. Defendant offered a payment option—"Amount Due"—that misleadingly represented that Defendant would collect something more than the minimum amount due, when in fact, Defendant only collected the minimum amount due, causing Plaintiff and the Class members to carry a balance and accrue interest.

96.     This conduct also violated N.C. Gen. Stat. § 75-55 because it was unconscionable, unfair, and deceptive to offer a misleading payment option that served no purpose but to confuse consumers and enrich Defendant to their detriment.

97.     Plaintiff and the Class members selected "Amount Due," believing it to mean something different than "Minimum Amount Due." Plaintiff and the Class members relied on the

17

option's name, as contrasted with the alternative option "Minimum Amount Due," in selecting the option labeled "Amount Due" and believing it to mean something other than "Minimum Amount Due." This reliance was reasonable, as it was based upon industry practice and common sense.

98.      As a result, Bank of America withdrew only the minimum amounts due on Plaintiff's and Class members' account balances, leaving balances that carried over and incurred interest charges.

99.      Plaintiff and the Class members were harmed by this deceptive conduct.

100.      This cause of action is being pled in the alternative to the NCUDTPA claims.

**<u>COUNT III</u>**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**On Behalf of Plaintiff and the Class**

101.      Paragraphs 1 to 71 are incorporated herein by reference.

102.      When Plaintiff and the Class members opened credit cards with Bank of America, they entered into uniform Card Agreements with Bank of America.

103.      The claims of Plaintiff and the Class members are governed by North Carolina law under their uniform Card Agreements with Bank of America.

104.      Under North Carolina law, every contract contains an implied covenant of good faith and fair dealing. Under the covenant, neither party will do anything that injures the right of the other to receive the benefits of the agreement.

105.      In addition to the implied covenant that inheres in all contracts, Defendant owed a special duty to Plaintiff and the Class members as their creditor to act in good faith and fair dealing with them.

106.      Under the uniform Card Agreements between Bank of America, on the one hand, and Plaintiff and the Class members on the other, Bank of America agreed not to charge interest on purchases if Plaintiff and the Class members paid the balance owed each month by the due date (i.e., the statement balance).

18

107.    For cardholders who enabled automatic payments, Defendant offered online automatic payment options labeled "Minimum Amount Due," "Amount Due," "Account Balance," and "Fixed Amount."

108.    The phrase "Amount Due" implies that the "Amount Due" option will cause Bank of America to withdraw full amount owed on the credit card each month, similar to the statement balance option offered by other banks. Reasonable consumers would expect that by choosing "Amount Due," they are choosing to pay off the amount due as of the last statement—thereby avoiding interest charges on purchases under the Card Agreement.

109.    In fact, "Amount Due" means the exact same thing as "Minimum Amount Due."

110.    Reasonable consumers would not select "Amount Due" if they intended only to pay their minimum monthly amount; rather, they would select "Minimum Amount Due."

111.    Contrary to the expectations of reasonable consumers, selecting "Amount Due" will cause Bank of America to withdraw only the *minimum* amount due—typically leaving a balance to carry over to the next month and accrue interest charges.

112.    Plaintiff and the Class members selected "Amount Due," understandably believing it to mean something different than "Minimum Amount Due." Plaintiff and the Class members relied on the option's name, as contrasted with the alternative option, "Minimum Amount Due," in selecting the option labeled "Amount Due" and believing it to mean something other than "Minimum Amount Due." This reliance was reasonable as it was based upon industry practice and common sense.

113.    As a result, Bank of America withdrew only the minimum amounts due on Plaintiff's and Class members' balances, leaving balances that carried over and incurred interest charges.

114.    By offering this deceptive and duplicative option, Bank of America did not act fairly and in good faith toward its customers. Rather, Bank of America injured Plaintiff's and the Class members' right to receive a benefit under their Card Agreements. Bank of America's duplicative

payment options are misleading and interfere with the right of cardholders to pay their statement balance each month and avoid interest charges.

115.    Plaintiff and the Class members selected "Amount Due" based upon the reasonable belief that this option would enable them to take advantage of the right to pay off their statement balance and not incur interest charges each month. By then withdrawing only the minimum payment due, notwithstanding that Plaintiff and the Class members had not selected "Minimum Amount Due," Bank of America breached the covenant of good faith and fair dealing.

116.    Plaintiff and the Class members were harmed due to this breach.

### COUNT IV
### UNJUST ENRICHMENT
### On Behalf of Plaintiff and the Class

117.    Paragraphs 1 to 71 are incorporated herein by reference.

118.    The claims of Plaintiff and the Class members are governed by North Carolina law under their uniform Card Agreements with Bank of America.

119.    Plaintiff and the Class members conferred benefits on Defendant; namely, Plaintiff and the Class members paid their credit card bills, including interest unfairly obtained due to Defendant's deceptive payment options.

120.    Defendant's retention of these benefits is unjust because Defendant created a meaningless and duplicative payment option that was likely to mislead consumers into carrying a balance on their credit cards and pay interest to Defendant.

121.    Plaintiff and the Class members are entitled to restitution and Defendant is required to disgorge the benefits it unjustly obtained.

122.    This claim is pled in the alternative to Count III to the extent required by North Carolina law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1.      An Order certifying the proposed Class pursuant to Federal Rule of Civil Procedure 23 and appointing Plaintiff and his counsel to represent them;

2.      Monetary and/or equitable relief in an amount to be determined at trial;

3.      Statutory damages and/or penalties, including treble damages;

4.      Punitive or exemplary damages;

5.      Pre- and post-judgment interest to the extent provided by law;

6.      Attorneys' fees and costs of suit, including costs of notice, administration, and expert fees; and

7.      Such other legal or equitable relief, including injunctive or declaratory relief, as the Court may deem appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE.**

Dated: June 3, 2020                              Respectfully submitted,

                                                 SHEPHERD, FINKELMAN, MILLER
                                                 & SHAH, LLP
                                                 /s/ James C. Shah
                                                 James C. Shah
                                                 Natalie Finkelman Bennett
                                                 475 White Horse Pike
                                                 Collingswood, NJ 08107
                                                 Telephone: (856) 526-1100
                                                 Facsimile: (866) 300-7367
                                                 Email: jshah@sfmslaw.com
                                                            nfinkelman@sfmslaw.com

                                                 Hassan A. Zavareei (*pro hac vice* application to
                                                 be filed)
                                                 Katherine M. Aizpuru (*pro hac vice* application
                                                 to be filed)
                                                 TYCKO & ZAVAREEI LLP
                                                 1828 L Street NW, Suite 1000

Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com
Email: kaizpuru@tzlegal.com