# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MICHAEL JETTE,
Individually and on behalf of all others
similarly situated,

        Plaintiff,

   v.

BANK OF AMERICA, N.A.,

        Defendant.

Case No. 2:20-cv-06791-SDW-LDW

Hon. Leda D. Wettre

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF CLASS NOTICE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION .................................................................................1

I.   LITIGATION HISTORY ...................................................................2

    A.   Factual Background ...................................................................2

    B.   Procedural History......................................................................4

    C.   Mediation Session Before the Honorable Layn R. Phillips (Ret.)...............4

II.   SUMMARY OF SETTLEMENT TERMS.................................................5

    A.   The Settlement Class.................................................................5

    B.   Class Settlement Consideration....................................................5

    C.   Class Notice Plan ...................................................................6

    D.   Attorneys' Fees And Expenses, And Representative Plaintiff's Incentive Awards ..................................................................................7

III.   ARGUMENT ..............................................................................7

    A.   Legal Standard ......................................................................7

    B.   The Settlement is Fair, Reasonable, and Adequate....................................9

        1.   Rule 23(e)(2)(A): The Class Representative And Class Counsel Have Adequately Represented The Class................................................9

        2.   Rule 23(e)(2)(B): The Proposal was Negotiated at Arm's Length......10

        3.   Rule 23(2)(c)(i): The Relief Provided For the Class Is Adequate, Taking Into Account The Costs, Risks, And Delay Of Trial And Appeal Weigh In Favor Of Approval ................................................11

        4.   Rule 23(2)(c)(ii): The Relief Provided For The Class Is Adequate, Taking Into Account The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class, Including The Method Of Processing Class-Member Claims ......................................................12

        5.   Rule 23(2)(c)(iii): The Relief Provided For The Class Is Adequate, Taking Into Account The Terms Of Any Proposed Award Of Attorneys' Fees, Including Timing Of Payment .................................13

        6.   Rule 23(2)(c)(iv): Any Agreement Required To Be Identified Under Rule 23(E)(3) ........................................................................14

7.   Rule 23(e)(2)(D): The Proposal Treats Class Members Equitably Relative To Each Other..................................................................14

C.   The Court Will be Able to Certify the Class for Purposes of Settlement..................................................................................15

1.   The Class Members Are Too Numerous To Be Joined......................15

2.   The Commonality and Predominance Factors Are Satisfied..............15

3.   Plaintiff's Claims Are Typical Of The Class......................................16

4.   Plaintiff And Class Counsel Have And Will Fairly And Adequately Protect The Interests Of The Class ......................................................16

5.   The Requirements Of Rule 23(b)(3) Are Met ....................................17

D.   The Proposed Class Notice and Plan for Dissemination Are Reasonable and Should be Approved..................................................................19

CONCLUSION ........................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alves v. Main,*
2012 WL 6043272 (D.N.J. Dec. 4, 2012)..........................................................10

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997)..........................................................................................17

*Atis v. Freedom Mortg. Corp.,*
2018 WL 5801544 (D.N.J. Nov. 6, 2018) .........................................................16

*Beneli v. BCA Fin. Servs., Inc.,*
324 F.R.D. 89 (D.N.J. 2018)............................................................................14

*Bodnar v. Bank of Am., N.A.,*
2016 WL 4582084 (E.D. Pa. Aug. 4, 2016) ................................................ 13, 20

*Gillis v. Respond Power,* LLC,
677 Fed. App'x 752 (3d Cir. 2017) ...................................................................18

*Girsh v. Jepson,*
521 F.2d 153 (3d Cir. 1975) ...............................................................................9

*In re Am. Fam. Enterprises,*
256 B.R. 377 (D.N.J. 2000) ..............................................................................14

*In re NFL Players' Concussion Injury Litig.,*
821 F.3d 410 (3d Cir. 2016) ....................................................................... *passim*

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
330 F.R.D. 11 (E.D.N.Y. 2019).......................................................................9, 11

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent* actions,
148 F.3d 283 (3d Cir. 1998) ........................................................................ 13, 16

*In re Rite Aid Corp. Sec. Litig.,*
396 F.3d 294 (3d Cir. 2005) ..............................................................................13

*Ins. Brokerage Antitrust Litig.,*
297 F.R.D. 136 (D.N.J. 2013)............................................................................10

*Johnson v. Cmty. Bank, N.A.,*
2013 WL 6185607 (M.D. Pa. Nov. 25, 2013) ............................................... 12, 13

*MacDonald v. Cashcall, Inc.,*
333 F.R.D. 331 (D.N.J. 2019)............................................................................18

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ...................................................................16

*Rodriguez v. Nat'l City Bank*,
   726 F.3d 372 (3d Cir. 2013) ...................................................................15

*Shapiro v. Alliance MMA, Inc.*,
   2018 WL 3158812 (D.N.J. June 28, 2018)................................... 7, 10, 17

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ............................................................ 14, 18

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016).............................................................................18

*Udeen v. Subaru of Am., Inc.*,
   2019 WL 4894568 (D.N.J. Oct. 4, 2019) .................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).................................................................................15

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
   726 F.2d 956 (3d Cir. 1983) ...................................................................14

*Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ...................................................................12

## **Rules**

Fed. R. Civ. P. 23 ............................................................................. *passim*

## INTRODUCTION

Plaintiff, Michael Jette ("Plaintiff" or "Mr. Jette"), respectfully submits this Memorandum of Law in Support of Notice of Motion and Motion for Preliminary Approval of Class Action Settlement ("Memorandum").

After nearly a year of litigation, including a Motion to Dismiss and Strike Plaintiff's class claims and the filing of a First Amended Complaint, the Parties attended a mediation session with the Honorable Layn R. Phillips (Ret.) and reached a settlement (Declaration of James C. Shah ("Shah Decl.") Ex. 1 (the "Settlement"))[1] that provides outstanding relief to Bank of America customers who enrolled in eBill AutoPay and opted to pay the "Account Balance" (which Plaintiff alleges was functionally equivalent to the "Minimum Amount Due" automatic payment option) and paid interest charges that they did not intend to incur.

As described below, the Settlement provides direct relief to customers who paid interest charges that, as alleged by Plaintiff, they did not intend to incur.  The Settlement provides, *inter alia*:

- BANA will pay $5,950,000 to establish a common fund for the benefit of the Settlement Class (the "Settlement Fund").  Automatic checks will be issued from this Settlement Fund to Settlement Class Members identified by BANA's records, who will receive a *pro rata* share of the Settlement Fund based on the total number of Settlement Class Members and the total amount of interest paid by the Settlement Class Members from when their initial selection of the payment option "Amount Due" became effective to when their

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Shah Decl., and incorporated herein by reference.  To the extent any capitalized terms in this Memorandum are not defined herein, these terms will have the meaning ascribed to them in the Settlement Agreement.

switch of payment options from "Amount Due" to "Account Balance" became effective;

- Remaining monies in the Settlement Fund due to uncashed checks will be paid in a second *pro rata* distribution to Settlement Class Members who received and cashed the first check if the funds are sufficient to send a check in an amount greater than $5.00 per Settlement Class Member;

- Remaining monies left in the Settlement Fund due to uncashed checks following the second distribution will be paid to the Center for Responsible Lending in a *cy-pres* distribution;

- The costs of email and direct mail notice (along with the costs for establishing and monitoring a Settlement website) will be paid from the Settlement Fund; and

- Reasonable attorneys' fees approved by the Court up to 33.33% of the total Settlement Fund, reasonable expenses, and a Service Award to the Plaintiff of up to $7,500 will be paid from the Settlement Fund.

As set forth below, the proposed Settlement Agreement meets the criteria for preliminary approval under Rule 23, and, therefore, Plaintiff respectfully requests that the Court enter the Proposed Preliminary Approval Order: (1) preliminarily approving the Settlement; (2) provisionally certifying the Settlement Class; (3) appointing Hassan A. Zavareei of Tycko & Zavareei LLP and James C. Shah of Miller Shah LLP as Class Counsel; (4) appointing Mr. Jette as Class representative; and (5) setting the Parties' proposed schedule for notice, claims, final approval, and other matters.

# I.    LITIGATION HISTORY

## A.    <u>Factual Background</u>

BANA allowed cardholders to set up automatic monthly payments online and provided cardholders with the following payment options: (1) "Minimum Amount

Due"; (2) "Account Balance"; (3) "Fixed Amount"; and (4) "Amount Due."[2] Amended Class Action Complaint (Dkt. 22) ("FAC") ¶¶ 28-29.  The "Minimum Amount Due" option allowed cardholders to pay the minimum amount owed on their most recent credit card statement, which would leave a balance that carries over to the following month and incurs interest.  *Id.* ¶ 35.  Plaintiff alleges that the "Amount Due" option was misleading since customers who selected it likely intended to pay the total "amount due" each month, leaving no balance to carry over and incur interest, but instead found themselves paying only the minimum amount due, thereby leaving a balance that was subject to interest charges.  *Id.* ¶ 30.  In other words, Plaintiff alleges that "Amount Due" was duplicative of "Minimum Amount Due" and was potentially confusing to customers who intended to pay off their entire monthly credit card balance and instead ended up paying the minimum amount and accruing interest they were trying to avoid.  *Id.* ¶ 13.

Mr. Jette opened a Bank of America credit card in December 2019 for personal use.  *Id.* ¶ 44.  Prior to making his first payment on his Bank of America credit card, Mr. Jette set up automatic payments through BANA's website, authorizing it to withdraw monthly payments from his deposit account at Chase Bank. Mr. Jette selected "Amount Due."  *Id.* ¶ 48.  He did so with the understanding that BANA would withdraw the balance reflected on his last monthly statement by the due date, thus ensuring that he would avoid being charged interest.  *Id.*  However, the "Amount Due" option only caused Bank of America to withdraw the minimum amount due from Mr. Jette's deposit account, leaving a balance that accrued interest. *Id.* ¶ 39.  Mr. Jette further alleges that he and thousands of other similarly situated individuals were harmed by this practice.  *Id.* ¶¶ 61, 66.

---

[2] During the course of this litigation, BANA ceased using the "Amount Due" payment option that is the basis of Mr. Jette's claims. (Shah Decl. ¶ 6.)

### B.    Procedural History

Mr. Jette filed his Complaint in this Court on June 3, 2020, asserting claims on behalf of himself and a proposed nationwide Class of Bank of America cardholders. (*See* Complaint, Dkt. 1.)  On August 10, 2020, Bank of America moved to dismiss and to strike Mr. Jette's Class claims. (*See* Dkt. 9.)  On August 25, 2020, Plaintiff filed an opposition brief (Dkt. 15) and, on September 4, 2020, Bank of America filed a reply brief. (Dkt. 18.)

On October 10, 2020, this Court issued an Order granting in part and denying in part Bank of America's motion. (Dkt. 20.)  Mr. Jette filed a first Amended Class Action Complaint ("FAC") on November 9, 2020 (Dkt. 22), asserting claims for violation of the New Jersey Consumer Fraud Act ("CFA"), breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.  Shortly after the FAC was filed and before Bank of America's response came due, the Parties agreed to stay the case pending mediation.

### C.    Mediation Session Before the Honorable Layn R. Phillips (Ret.)

Counsel for the Parties attended a mediation session before the Hon. Layn R. Phillips (Ret.) on March 17, 2021.  (Shah Decl. ¶ 18).  Prior to the mediation, the Parties exchanged certain data and information about the potential damages, and extensive mediation submissions. *Id.* At the conclusion of a full-day mediation session with Judge Phillips, the Parties were able to reach agreement on the terms of the Settlement which is the subject of this Motion. *Id.* Following the mediation, the Parties drafted the formal Settlement Agreement with attachments, including details of the notice and administration process. *Id.* Drafting the Settlement Agreement and exhibits required substantial negotiations between the Parties. The Parties fully executed the Settlement Agreement on May 21, 2021. *Id.* ¶18.

## II.    SUMMARY OF SETTLEMENT TERMS

The Settlement resolves all claims of Plaintiff and the Settlement Class against Bank of America related to the allegations in the Complaint concerning the "Amount Due" payment option.  The terms include the following:

### A.    The Settlement Class

The Settlement Class includes: all persons in the United States (1) with a Bank of America credit card (2) who enrolled in Bank of America's eBill AutoPay for their credit card and (3) selected the "Amount Due" payment option before March 7, 2021, and (4) switched their payment option from "Amount Due" to "Account Balance" after making an "Amount Due" payment and being assessed interest between June 3, 2014 and May 21, 2021.  (*See* Shah Decl., Ex. 1, at § I.S.)[3]

### B.    Class Settlement Consideration

The Settlement provides substantial benefits that are tailored to harms alleged in the Action.  BANA will pay $5,950,000 to establish a common Settlement Fund for the benefit of the Settlement Class.  (*Id.* § IV.A.)  Without the need to file a claim form, all Settlement Class Members will automatically receive a check representing a *pro rata* share of the net Settlement Fund based on (1) the total number of Settlement Class Members and (2) the total amount of interest paid by Settlement Class Members, from when their initial selection of the payment option "Amount Due" became effective to when their switch of payment options from "Amount Due" to "Account Balance" became effective.  (*Id.* § IV.G.2.)

---

[3] Excluded from the Class are Defendant; any entities in which BANA has a controlling interest; its agents and employees; any Judge to whom this action is assigned; any member of such Judge's staff and immediate family; and persons who validly and timely exclude themselves from the Settlement.  (*Id.*)

The Settlement Administrator, a neutral third party, will administer the payment from the Settlement Fund by sending, via first-class United States Mail, a check valid for 180 days from the date of issue to the mailing addresses provided by Bank of America.  The Settlement checks will be mailed to each Settlement Class Member within 30 days of the Effective Date of the Settlement.  (*Id.* § IV.G.4.)

Any amount left in the Settlement Fund due to uncashed checks will be subject to a second *pro rata* distribution to Settlement Class Members who received and cashed the first check in the event that the funds are sufficient to send a check in an amount greater than $5.00 per Settlement Class Member.  Any amount left in the Settlement Fund due to uncashed checks following this second distribution, or in the event that a second distribution is not made because it is not economically feasible, will be subject to a *cy-près* distribution donated to the Center for Responsible Lending. (*Id.* § IV.G.5.)

### C.    Class Notice Plan

Costs of notice and administration through a third-party administrator jointly selected by the Parties will be paid from the Settlement Fund.  (Shah Decl., Ex. 1 § I.R.)  After receiving competitive bids, the Parties have selected EPIQ to administer this Settlement, subject to Court approval.   (Shah Decl. ¶22.)   Notice will be disseminated to all previously identified Settlement Class Members through:

- A short-form notice, which will be sent via email if a valid email address is available, or if there is no valid email address, by direct first-class mail as a postcard notice.  The short-form notice will also be posted on the Settlement website (Ex. 1 §§ VIII.C-D.1.); and

- A long-form notice, which will be posted on the Settlement website. (*Id.* § VIII.B.).

According to BANA's records, there are approximately 100,000 Settlement Class Members.  (Shah Decl. ¶5.)   BANA will provide the Settlement Class

Members' names, last known mailing addresses, and last known email addresses to the Settlement Administrator to facilitate this process. The Settlement Administrator will apply reasonable means to verify and update the addresses provided. (Ex. 1 §§ VIII.A-D.1.)

### D. Attorneys' Fees And Expenses, And Representative Plaintiff's Incentive Awards

In addition to the benefits of the Settlement above, Class Counsel will seek an award of attorneys' fees of up to a maximum of 33.33% of the Settlement Fund and a Service Award for Plaintiff in the amount of $7,500 to be paid from the Settlement Fund. Class Counsel will also seek reimbursement of reasonable expenses to be paid from the Settlement Fund. (*Id*. § X.A.)

## III.  ARGUMENT

Approval of a class action settlement is governed by Federal Rule of Civil Procedure 23(e). Approval occurs in two steps: (1) a preliminary approval finding and notice to the class; and (2) a subsequent final approval hearing. *See, e.g., Shapiro v. Alliance MMA, Inc.*, No. CV 17-2583 (RBK/AMD), 2018 WL 3158812, at *2 (D.N.J. June 28, 2018). The Settlement is likely to achieve final approval as fair, reasonable, and adequate, and the Court is likely to be able to certify the Settlement Class.

### A.  Legal Standard

The recent amendments to Rule 23 of the Federal Rules of Civil Procedure revised the preliminary approval process for class action settlements. Under Rule 23 as amended, the Court must determine whether "giving notice is justified by the parties' showing that the court will *likely* be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B) (emphasis added).

Under Rule 23(e)(2), at the preliminary approval stage, the Court must find that the settlement is likely to meet the fairness factors:

*Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is *fair, reasonable, and adequate* after considering whether:

**(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

**(i)** the costs, risks, and delay of trial and appeal;

**(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

**(iii)** the terms of any proposed award of attorneys' fees, including timing of payment;

**(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2) (emphasis added). The 2018 Advisory Committee Notes make clear, however, that these factors do not displace the "lists of factors" courts have traditionally applied to assess proposed class settlements.

Courts in the Third Circuit evaluate whether a settlement is "fair, reasonable, and adequate" using the applicable *Girsh* approval factors:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund

in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). Thus, under Rule 23 as amended, at the preliminary approval stage, the "Court first considers the Rule 23(e)(2) factors, and then considers additional [*Girsh*] factors not otherwise addressed by the Rule 23(e)(2) factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

Application of both the Rule 23(e)(2) and traditional factors demonstrate that the Settlement here is fair, reasonable, and adequate, and is in the best interests of the Class.

**B.**   **The Settlement is Fair, Reasonable, and Adequate**

**1.**   **Rule 23(e)(2)(A): The Class Representative And Class Counsel Have Adequately Represented The Class**

This factor, like the third *Girsh* factor, focuses on "the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment [hereinafter, 2018 Adv. Comm. Notes]; *In re NFL Players' Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (plaintiffs' counsel should "develop[] enough information about the case to appreciate sufficiently the value of the claims"); *Girsh*, 521 F.2d at 157 (factor three considers "the stage of the proceedings").

Plaintiff's Counsel had a deep understanding of Plaintiff's claims prior to negotiating the Settlement. Plaintiff's counsel extensively researched and analyzed claims for Mr. Jette in this Action prior to serving his pre-suit demand and filing the lawsuit. Plaintiff's counsel conducted substantial research into the legal claims in connection with Bank of America's Motion to Dismiss and Motion to Strike. In fact, Plaintiff's Counsel had further researched and analyzed Defendant's claims in

anticipation of a renewed motion to dismiss Mr. Jette's FAC.  (Shah Decl. ¶8.)  Thus, Plaintiff's Counsel had more than enough information to evaluate the claims and that expertise was applied to crafting Settlement terms that are well-tailored to the facts of the case.

In sum, Plaintiff's Counsel here conducted significant investigation and also have a firm "grasp of the legal hurdles that [Plaintiffs] would need to clear in order to succeed on their" claims.  *In re NFL Players*, 821 F.3d at 436.

## 2. Rule 23(e)(2)(B): The Proposal was Negotiated at Arm's Length

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests."  2018 Adv. Comm. Notes.  The Settlement is the result of intensive, arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this Action, with the assistance of a respected mediator who guided such negotiations without undue pressure or collusion.  (Shah Decl. ¶¶10-13.)   Furthermore, Plaintiff's Counsel is experienced in litigation, certification, trial, and settlement of nationwide consumer class action cases. (*Id*. ¶9-11. (firm resumes))

In the Third Circuit, a presumption of fairness attaches when a settlement is negotiated by experienced and informed counsel and assisted by a respected mediator.  *See, e.g., In re NFL Players*, 821 F.3d at 435.  This approach is consistent with the principle that "settlement of litigation is especially favored by courts in the class action setting."  *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144 (D.N.J. 2013).   "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties."  *Shapiro*, 2018 WL 3158812, at *2 (quoting *Alves v. Main*, Case No. 01-789 (DMC), 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012)).

This presumption applies here given that experienced counsel on both sides of the deal endorse the Settlement, and it followed an all-day mediation session with a highly-respected neutral party, the Honorable Layn R. Phillips (Ret.).  This factor supports granting preliminary approval.  *See Udeen v. Subaru of Am., Inc.*, No. CV 18-17334 (RBK/JS), 2019 WL 4894568, at *3 (D.N.J. Oct. 4, 2019) (noting that the presumption of fairness is "sufficient for preliminary approval").

### 3.   Rule 23(2)(c)(i): The Relief Provided For the Class Is Adequate, Taking Into Account The Costs, Risks, And Delay Of Trial And Appeal Weigh In Favor Of Approval

The relief provided by the Settlement satisfies Rule 23(e)(2)(C)(i).  This subsection subsumes several *Girsh* factors, "including (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial."  *In re Payment Card Interchange Fee*, 330 F.R.D. at 36.[4]  The excellent results, particularly given the risks Plaintiff faced, weighs in favor of approval.

Plaintiff believes his claims are strong on the merits and was prepared to prove that Bank of America violated the CFA and breached its contractual obligations to consumers.  Nevertheless, absent settlement, Plaintiff would have faced significant litigation risks, as well as time-consuming and expensive litigation.  To prevail, Plaintiff would have had to survive a motion to dismiss the FAC, obtain class certification, survive a likely motion for summary judgment, and prevail at trial and any subsequent appeal.  Even if Plaintiff succeeded at every stage, it almost certainly

---

[4] The seventh *Girsh* factor, the ability of Bank of America to withstand a greater judgment, is irrelevant here.  This Girsh factor is "most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement."  *In re NFL Players*, 821 F.3d at 440.  Likewise, the second *Girsh* factor, "the reaction of the class" is premature as notice has not been sent out.

would have taken several years.  By comparison, the proposed settlement provides valuable, certain, and prompt relief to the Settlement Class Members.

The eighth and ninth *Girsh* factors direct the court to consider whether the Settlement is in the range of reasonableness in light of the best possible recovery and all the attendant risks of continued litigation.  *In re NFL Players*, 821 F.3d at 440 (quoting *Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004)) ("In evaluating the eighth and ninth *Girsh* factors, we ask 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'").

The Settlement here speaks for itself: it provides automatic relief without the need for filing a claim form and based on the amount of interest improperly paid by the Settlement Class Members from a Settlement Fund of $5,950,000.  (*See supra* § 2.B.)  Here, the total the amount of interest collected by BANA from the Settlement Class) is approximately $11,000,000.   (Shah Decl. ¶19.)  Thus, the Settlement amounts to a recovery of approximately fifty-four (54%) of the total damages, which by any measure is an exceptional result.  The recovery here easily satisfies the eighth and ninth *Girsh* factors, particularly in light of the uncertainties of trial and the potential difficulty in proving class liability and damages against Bank of America. *See Johnson v. Cmty. Bank, N.A.*, No. 3:12-CV-01405, 2013 WL 6185607, at *3 (M.D. Pa. Nov. 25, 2013) (finding that a $2.5 million settlement for approximately 50,000 class members was reasonable in an excessive overdraft fee case).

### 4.    Rule 23(2)(c)(ii): The Relief Provided For The Class Is Adequate, Taking Into Account The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class, Including The Method Of Processing Class-Member Claims.

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." 2018 Adv. Comm. Notes.

12

Here, Class Members need not fill out any claim form to receive the Settlement payment.  Instead, Settlement Class Members are identified in Bank of America's records and consist of all persons who enrolled in its eBill AutoPay for their credit card, selected the "Amount Due" payment option, and switched their payment option to "Account Balance" during the applicable period.  (Ex. 1 § IV.G.2.)  These Settlement Class Members will receive automatic payment in the form of a check to be distributed *pro rata* from the Settlement Fund.  (*Id*.)  The emailed and mailed notice to these Settlement Class Members will state that they are entitled to their *pro rata* share of the net Settlement amount.  (*Id*. § VIII.A.)  The proposed method of distributing the Settlement funds easily satisfies this factor.

5.    **Rule 23(2)(c)(iii): The Relief Provided For The Class Is Adequate, Taking Into Account The Terms Of Any Proposed Award Of Attorneys' Fees, Including Timing Of Payment**

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement."  2018 Adv. Comm. Notes.  Under the Settlement Agreement, Class Counsel are entitled to request an attorneys' fee award of up to 33.33% of the Settlement Fund, as well as reimbursement of litigation costs incurred in the Action.  (Ex. 1 § X.A.)  This requested fee award is well within the accepted range in this Circuit.  *See Bodnar v. Bank of Am., N.A.*, No. CV 14-3224, 2016 WL 4582084, at *5 (E.D. Pa. Aug. 4, 2016) ("the court finds that an award of 33% of the Settlement Fund is consistent with similar awards throughout the Third Circuit"). And this "percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent* actions, 148 F.3d 283, 333 (3d Cir. 1998)).  Such award remains subject to this Court's approval.

Accordingly, Plaintiff requests that the Court find that this factor will favor granting final and should reserve a full analysis of this factor at the final approval stage.

At this stage, it suffices to say that Class Counsel's fee request is well within the range of reasonableness in this Circuit.

### 6. Rule 23(2)(c)(iv): Any Agreement Required To Be Identified Under Rule 23(E)(3)

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal." Here, there are no "side agreements" concerning this Settlement.

### 7. Rule 23(e)(2)(D): The Proposal Treats Class Members Equitably Relative To Each Other

"A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)). The proposed Settlement benefits and categories satisfy this standard and treats all Class Members fairly.

Here, because the Settlement distributes payments on a *pro rata* basis, Settlement Class Members will be treated equitably. *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 105 (D.N.J. 2018) ("in particular, pro rata distributions are consistently upheld"); *In re Am. Fam. Enterprises*, 256 B.R. 377, 416 (D.N.J. 2000) (finding *pro rata* distribution provides equitable treatment of class members). Further, because each Settlement Class Member will be required to give the same Releases, which uniformly releases Bank of America from all claims relating to the subject matter of the Action during the Class Period, and does not affect the apportionment of relief to Settlement Class Members, this factor favors preliminary approval. (Ex. 1 § V.)

### C.  The Court Will be Able to Certify the Class for Purposes of Settlement

When a class has not been certified before settlement, the court considers whether "it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23, 2018 Adv. Comm. Notes. This Court will be able to certify the proposed Settlement Class in connection with final approval here.

#### 1.  The Class Members Are Too Numerous To Be Joined

For certification of a class to be appropriate, its members must be so numerous that their joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). There are approximately 100,000 Settlement Class Members per Bank of America's records and they can be specifically identified, including their account information and contact information. (Shah Decl. ¶5.) Numerosity, therefore, is readily satisfied.

#### 2.  The Commonality and Predominance Factors Are Satisfied

Rule 23 next requires common questions of law or fact. Fed. R. Civ. P. 23(a)(2). "Meeting this requirement is easy enough," *In re NFL Players*, 821 F.3d at 427, as commonality is satisfied if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class," *id*. at 426-27 (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)). The common questions in this Action include whether the "Amount Due" payment option was confusing to a consumer; whether Bank of America deprived Settlement Class Members of the benefits owed under its account agreements; and whether each Settlement Class Member conferred a benefit on Bank of America by selecting the "Amount Due" payment option. These questions are common to the Class, capable of Class-wide resolution, and "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 427 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Thus, the commonality requirement is met.

### 3.   Plaintiff's Claims Are Typical Of The Class

"Typicality ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001) (citation omitted).  Typicality does not require that every class member "share identical claims," (*id.*), but only that plaintiff's and "class members' claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Atis v. Freedom Mortg. Corp.*, No. CV 15-03424 (RBK/JS), 2018 WL 5801544, at *7 (D.N.J. Nov. 6, 2018).

In this case, Mr. Jette's claims are typical of those of the Settlement Class because he was exposed to, and utilized, the same allegedly misleading "Amount Due" payment option that was selected by the other members of the Settlement Class.  Typicality is, therefore, established.  *See In re NFL Players*, 821 F.3d at 428 (holding typicality met where plaintiffs "seek recovery under the same legal theories for the same wrongful conduct as the [classes] they represent").

### 4.   Plaintiff And Class Counsel Have And Will Fairly And Adequately Protect The Interests Of The Class

Two questions are relevant to adequacy of representation under Rule 23(a)(4): "(1) whether Plaintiffs' counsel is qualified, experienced, and able to conduct the litigation; and (2) whether any conflicts of interest exist between the named parties and the class they seek to represent." *Atis*, 2018 WL 5801544, at *7 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998)).  Plaintiff and his counsel do not have any conflicts with Class Members and have vigorously prosecuted this case.

#### i.   Class Counsel Are Well Qualified

Rule 23(g) sets forth the criteria for evaluating the adequacy of plaintiffs' counsel:

16

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class . . . .

Fed. R. Civ. P. 23(g)(1)(A). Class Counsel are well-qualified to serve as Class Counsel, and they have expended significant time and expense in pursuing this case, including defeating a motion to dismiss on certain claims, a motion to strike, and mediation. (*See* Shah Decl. ¶¶8-18.)

Collectively, Class Counsel have decades of experience successfully representing plaintiffs and classes in complex class litigation, including both in this District and nationwide. (Shah Decl. ¶9.)

ii. <u>Plaintiff Has No Conflict Of Interest And Has Diligently Pursued The Action On Behalf Of the Other Class Members</u>

"A named plaintiff is 'adequate' if his interests do not conflict with those of the class." *Shapiro*, 2018 WL 3158812, at *5. Plaintiff agreed to serve in a representative capacity, communicated diligently with his attorneys, gathered relevant documents and produced them to his attorneys, and helped prepare the allegations in the complaints. (Shah Decl. ¶7.) Plaintiff will continue to act in the best interests of the other Class Members; there are no conflicts between Plaintiff and the Settlement Class. *See, e.g., id.* (holding adequacy requirement met where the plaintiff had no interests antagonistic to the class); (Shah Decl. ¶7.)

**5.    The Requirements Of Rule 23(b)(3) Are Met**

As to the predominance and superiority requirements, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there will be no trial." *Amchem Prods. v. Windsor*, 521 U.S. 591,

17

620 (1997). Indeed, the Third Circuit has noted that it is "more inclined to find the predominance test met in the settlement context." *In re NFL Players*, 821 F.3d at 434 (quoting *Sullivan*, 667 F.3d at 304 n.29). The predominance and superiority requirements are met here.

    i.    Common Issues Of Law And Fact Predominate For Settlement Purposes.

The predominance inquiry tests the cohesion of the class, "ask[ing] whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Predominance is ordinarily satisfied, for settlement purposes, when the claims arise out of the defendant's common conduct. *See, e.g., Sullivan*, 667 F.3d at 299-300 ("[T]he focus is on whether the defendant's conduct was common as to all of the class members.").

Here, Bank of America offered the same automatic payment options to all Settlement Class Members, using the same language and the same uniform account agreements. *See Gillis v. Respond Power,* LLC, 677 Fed. App'x 752, 758 (3d Cir. 2017) ("federal courts have recognized that claims involving the interpretation of standard form contracts are particularly well-suited for class treatment"); *See, e.g., MacDonald v. Cashcall, Inc.*, 333 F.R.D. 331, 352 (D.N.J. 2019) (finding predominance satisfied where class members paid usurious interest rates under substantively identical lending agreements). Thus, common questions of law and fact predominate for settlement purposes.

    ii.   <u>A Class Action Is A Superior Means Of Resolving This Controversy.</u>

The Rule 23(b)(3) superiority inquiry "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re NFL Players*, 821 F.3d at 434.

Here, given the relatively low value of an individual claim, Settlement Class Members are unlikely to bring individual lawsuits against Bank of America. Furthermore, because the Settlement Class Members number approximately 100,000, Class-wide resolution of their claims in a single action is far more efficient than individual actions. *See id*. at 435 (citation omitted) (superiority satisfied where "the [s]ettlement avoids thousands of duplicative lawsuits and enables fast processing of a multitude of claims"). For these reasons, consistent with Rule 23(e)(1)(B), the Court will likely be able to certify the Settlement class in this case.

**D.**    **<u>The Proposed Class Notice and Plan for Dissemination Are Reasonable and Should be Approved</u>**

Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." In an action certified under Rule 23(b)(3), the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *In re NFL Players*, 821 F.3d at 435 (citation omitted).

The notices presented here comply with Rule 23 and the Due Process mandates. Using plain language, the proposed notice program provides all information required under Rule 23(c)(2)(B).

The Settlement Administrator will send a short-form notice via email to all Class Members where a valid email address is available, or if there is no valid email address, by direct first-class mail as a postcard notice.  (Ex. 1 § VIII.A.1.)  This notice provides key details in a short format and instructs Class Members to review the Full Notice on the Settlement Website, which provide robust information about the Settlement.  (*Id.* §VIII.C.)  Taken together, the individual notice satisfies due process and provides the "best notice that is practicable under the circumstances . . . ."  Fed. R. Civ. P. 23(c)(2)(B); *see Bodnar*, 2016 WL 4582084, at *2 (approving notice where it was distributed via email and U.S. Mail alongside the creation and maintenance of a settlement website).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the Proposed Preliminary Approval Order: (1) preliminarily approving the Settlement; (2) provisionally certifying the Settlement Class; (3) appointing Class Counsel; (4) appointing Plaintiff as Class representative; and (5) setting the Parties' proposed schedule for notice, claims, final approval, and other matters.

Dated: May 24, 2021     Respectfully submitted:

            MILLER SHAH LLP

            */s/ James C. Shah*
            James C. Shah
            Natalie Finkelman Bennett
            2 Hudson Place, Suite 100
            Hoboken, NJ 07030
            Telephone: (866) 540-5505
            Facsimile: (866) 300-7367
            Email: jcshah@millershah.com
               nfinkelman@millershah.com

TYCKO & ZAVAREEI LLP
Hassan A. Zavareei (*pro hac vice*)
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com